THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANCISCO JUAREZ VELAZQUEZ** <br><br> v. <br><br> **DAVID O'NEILL,** *in his official capacity as ICE Deputy Field Office Director;* **KRISTI NOEM,** *in her official capacity as Secretary of Homeland Security;* **TODD M. LYONS,** *in his official capacity as Acting Director of Immigration and Customs Enforcement*; **JAMAL LAWRENCE,** *Warden of the Philadelphia Federal Detention Center;* and **PAMELA BONDI,** *in her official capacity Attorney General of the United States*. | **CIVIL ACTION** <br><br> No. 25-6191 |

Henry, J.                                                                                                                                                December 3, 2025

<u>**MEMORANDUM**</u>

      Francisco Juarez Velazquez is one of many people who have recently been detained by immigration authorities under the authority of a new decision by the Bureau of Immigration Appeals (BIA). The BIA's interpretation of Immigration and Nationality Act (INA) § 235, *codified at* 8 U.S.C. § 1225, would permit it to treat as "seeking admission" an immigrant who was not inspected upon arrival in the country, no matter how long ago that arrival occurred.[1] This distinction deprives a detainee like Juarez of any hearing at which he could try to prove that he should be released on bond. Because I join the analysis of hundreds of other decisions in recent weeks and months rejecting the BIA's analysis, I grant Juarez's petition for a writ of habeas corpus and order his immediate release, subject to possible later rearrest.

---

[1] I follow my colleagues in referring principally to the section as codified in Title 8 of the United States Code rather than the sections as numbered in the INA, but it makes no difference. *But cf. Lattab v. Ashcroft*, 384 F.3d 8, 12 n.1 (1st Cir. 2004).

## I. BACKGROUND

Mr. Juarez entered the United States from Mexico around 2005 at the age of 23 years old.[2] *See* ECF No. 1 ("Pet.") at ¶¶ 22-23. On October 29, 2025, U.S. Immigration and Customs Enforcement ("ICE") agents surrounded Mr. Juarez's work vehicle and arrested him and three of his co-workers outside of a Home Depot in Philadelphia, Pennsylvania as they were leaving the store to go to work. *Id.* at ¶¶ 3, 24. He is now being held without eligibility for bond.[3] Mr. Juarez filed his Petition on October 30, 2025, in which he brings three claims for relief: (I) Violation of Fifth Amendment Right to Due Process (Unlawful Arrest and Detention); (II) Violation of Fifth Amendment Right to Due Process (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a)); and (III) EOIR 42B Cancellation of Removal.[4] He seeks a declaration that his detention is unlawful and an order requiring Respondents to release him immediately or, in the alternative, to provide him with a bond hearing.

Mr. Juarez and the Respondents stipulated to a briefing schedule and agreed that Mr. Juarez would not be removed from the United States and would continue to be detained within Pennsylvania. *See* ECF No. 7. The Petition is now fully briefed and ripe for decision.[5]

---

[2] Respondents' Opposition brief indicates that Mr. Jaurez may have entered the United States in 2011. *See* Opp. at 3. However, that fact is not material, and it is undisputed that he has been in the United States for several years.

[3] When he filed his Petition, Mr. Jaurez was being held in ICE's custody at a Federal Detention Center in the Eastern District of Pennsylvania. Pet. at ¶ 26. On November 9, 2025, he was transferred to the Moshannon Valley Processing Center, where he is currently detained. Opp. at 3.

[4] Because Mr. Juarez does not indicate that he has applied for Cancellation of Removal through the requisite process and that such application has proceeded through immigration court, and because I find that Mr. Juarez otherwise succeeds on his claims for violation of due process, I do not consider Count III.

[5] On December 2, 2025, Mr. Juarez filed a Motion for a Temporary Restraining Order which seeks identical relief (ECF No. 10). Because I am granting Mr. Juarez's Petition, the Motion for a Temporary Restraining Order will be denied as moot.

## II.  **DISCUSSION**

I do not proceed from a blank canvas. Instead, as the respondents acknowledge, "[t]he specific legal question raised by the petition has been considered by numerous courts," of which "[t]he majority . . . have rejected the government's position, including three decisions from this District." Opp. at 1; *cf. id.* n.2 (noting further that more than a dozen further like petitions are presently before this Court).[6] The "specific legal question" resolves into the preliminary issue of jurisdiction followed potentially by arguments on the merits that center on Section 1225, but which may also touch on the Constitution's Due Process Clause as well as immigration regulations.

Two weeks ago, another judge of this Court determined that there had been 288 decisions considering the "specific legal question raised," in 282 of which similar district courts have found jurisdiction to be proper and proceeded to rule on the merits in favor of the petitioner. *Demirel v. Federal Detention Center Philadelphia*, Civ. No. 25-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025); *see also id.* ECF 11-1 (appendix collecting 288 cases). Since then, a judge on the Southern District of New York calculated the figure at 350. *Barco Mercado v. Francis*, No. 1:25-cv-06582-LAK, slip op. at 10 & n.22 (S.D.N.Y. Nov. 26, 2025). There is not appellate authority on the matter from the judiciary.[7]

The parties are entitled to the giving of reasons, but I must balance the depth of my composition against the fact that I have little new to say, and Mr. Juarez is suffering an ongoing

---

[6] These numbers are even higher now. *See, e.g.*, *Soumare v. Jamison*, No. 25-6490, 2025 WL 3461542, at *2 (E.D. Pa. Dec. 2, 2025) (noting that there were five decisions from this District at the time that petition for a writ of habeas corpus was filed and approximately twenty further petitions were before this Court).

[7] BIA is an appellate court, but not a part of the judiciary. Although it decides appeals taken from immigration courts, it does not decide appeals taken from United States district courts like the 288 compiled in the *Demirel* appendix.

detention which I have determined to be unlawful. I therefore rely more than other times for the expression of my reasoning on the explanations already set out by my colleagues.

The respondents first object to the Court's jurisdiction. They raise three paragraphs of the INA: 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii). In short order: Section 1252(g) is inapposite, since Mr. Juarez does not attempt by this petition to address the commencement, adjudication, or execution of removal orders and their proceedings. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (applying jurisdiction stripping "only to [these] three discrete actions"). Section 1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process." *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (cleaned up). Finally, the respondents' statutory detention power is "not a matter of discretion" to which § 1252(a)(2)(B)(ii) applies. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The respondents next object that Mr. Juarez has failed to exhaust administrative remedies available to him, because Congress has crafted a regulatory process that is already capable of attending to his demand for redress. It is often prudent to require exhaustion prior to habeas relief, whether for the development of a full record, in respect of the immigration court's own area expertise, or for efficient adjudication. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 418 (2023). These concerns are greatly diminished where the parties agree that the development of an evidentiary record is unnecessary and my legal determinations are not constrained by the agency's own determinations. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024). Under the circumstances, the BIA's recent and general determination that detainees like Mr. Juarez are detained under § 1225 without recourse to a bond hearing, *Matter of Yajure Hurtado*, 29 I&N Dec.

216, 220 (BIA 2025), indicates that further administrative proceedings would only delay this Court's review and prolong Mr. Juarez's detention.

Turning to the merits, the first question is whether Mr. Juarez is properly detained under the mandatory detention provisions in 8 U.S.C. § 1225. According to respondents, Mr. Juarez's detention falls within the ambit of § 1225(b)(2)(A): "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . ." (emphasis added). The respondents claim that Mr. Juarez was "seeking admission" in this section although he was already within the country more than a decade at the time he was detained. This reading suffers from several textual problems: It is not a plain reading of the text, since it would be strange to say that Mr. Juarez sought to be admitted to a place he had already entered. *Kashranov v. Jamison*, 2025 WL 3188399 at *6–7 (E.D. Pa. Nov. 14, 2025). It threatens to make meaningless the concurrent requirement that the same "alien *seeking* admission" be an "*applicant* for admission." *Demirel*, 2025 WL 3218243, at *4. It would similarly make Congress's recent enactment of the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), which separately expanded mandatory detention, "beside the point." *Demirel*, 2025 WL 3218243, at * 4 (citing *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)). *But see Hurtado*, 29 I&N Dec. at 222 (offering alternative textual analysis). I thus hold that Mr. Juarez is not being detained pursuant to 8 U.S.C. § 1225 but rather, as he posits, he is being detained pursuant to 8 U.S.C. § 1226, which "applies to aliens already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

When an individual is detained pursuant to 8 U.S.C. § 1226, due process rights are implicated. *See Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful,

temporary, or permanent."). I echo Judge Wolson's analysis of due process in near identical circumstances in finding that Mr. Juarez's detention pursuant to 8 U.S.C. § 1226 without a bond hearing is unconstitutional. *See Kashranov*, 2025 WL 3188399, at *13 (holding that the *Mathews v. Eldridge* factors indicate that due process compels a pre-deprivation bond hearing for a Section 1226 detainee).

### III. CONCLUSION

For the reasons given above, Mr. Juarez's present detention is unlawful. I will issue an order granting him a bond hearing upon any future detention under § 1226.